UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ADMINISTRATORS OF THE TULANE                    CIVIL ACTION
EDUCATIONAL FUND, ET AL.

VERSUS                                          NO: 08-5096

BIOMEASURE, INC., ET AL.                        SECTION: R(1)


**ORDER AND REASONS**

Before the Court is (1) defendant Biomeasure Inc.'s motion
to strike plaintiffs' first through eighth causes of action under
Rule 12(f) of the Federal Rules of Civil Procedure, and to
dismiss plaintiffs' tenth and eleventh causes of action under
Rule 12(b)(6).[1]  The Court DENIES the motion as it relates to the
first through eighth causes of action, as Biomeasure has not
established that assertion of those claims against it is
improper.  Because plaintiffs have failed to state a claim in

---

[1]    (R. Doc. 153.)

their tenth and eleventh causes of action, the Court GRANTS the
motion as it relates to those claims.


I.    **BACKGROUND**

This case arises out of a dispute between the plaintiffs,
the Administrators of the Tulane Educational Fund and David H.
Coy, Ph.D., and defendants Biomeasure, Inc., Ipsen, S.A., and
Ipsen Pharma, S.A.S. (f/k/a SCARS) over the invention of a drug
called Taspoglutide.  Plaintiffs brought suit on December 5,
2008, alleging that defendants deprived them of their rights to
the drug in violation of multiple agreements.[2]  The original
complaint sets out the following seven causes of action: (1)
"Breach of Research Funding Agreement," (2) "Breach of Duty of
Good Faith and Fair Dealing Under the Research Funding
Agreement," (3) "Breach of the GLP-1 License," (4) "Breach of
Good Faith and Fair Dealing Under GLP-1 License," (5) "Unjust
Enrichment/Enrichment Without Cause," (6) "Breach of Fiduciary
Duty," and (7) "Correction of Inventorship."[3]

On December 10, 2009, the Court ruled that it lacked
personal jurisdiction over Ipsen and Ipsen Pharma, which are

---

[2]    (R. Doc. 1.)

[3]    (*Id.* at 13-18.)

2

French entities and are the parent companies of Biomeasure.[4]  The Court granted plaintiffs' motion for entry of final judgment against Ipsen and Ipsen Pharma under Fed. R. Civ. P. 54(b),[5] and plaintiffs appealed that judgment.[6]

Plaintiffs moved for leave to amend their complaint on October 15, 2010,[7] alleging that Biomeasure, Ipsen, and Ipsen Pharma entered into a binding settlement agreement with plaintiffs on February 11, 2010 but that defendants refused to honor that agreement.[8]  The agreement, plaintiffs contended, was memorialized in a "License and Settlement Term Sheet," which was signed by counsel for each party April 9, 2010.[9]  Plaintiffs alleged that, over the next few months, the parties discussed the language of a final settlement and drew up a Licence Agreement and a Settlement Agreement.[10]  Plaintiffs asserted that they executed those agreements, but that defendants ultimately refused to do so.

---

[4]     (R. Doc. 75.)

[5]     (R. Doc. 98.)

[6]     (R. Doc. 103.)

[7]     (R. Doc. 118.)

[8]     (R. Doc. 118-5.)

[9]     (R. Doc. 115, Ex. A (under seal).)

[10]    (R. Doc. 115, Ex. B & C (under seal).)

In the amended complaint, plaintiffs asserted three causes of action against defendants related to the purported settlement: "Breach of Settlement Agreement" (ninth cause of action), "Breach of Duty of Good Faith and Fair Dealing Under The Settlement Agreement" (tenth cause of action), and "Unfair Business Practices Respecting Settlement Agreement" (eleventh cause of action).  Plaintiffs maintained that, by entering into the settlement agreement, Ipsen and Ipsen Pharma consented to the personal jurisdiction of this Court.  Plaintiffs also reasserted their original seven causes of action against Ipsen, Ipsen Pharma, and Biomeasure and added an eighth cause of action for "Unfair Business Practices Respecting Inventorship."[11] Biomeasure opposed the motion to amend the complaint, challenging the reassertion of claims against the previously dismissed defendants and arguing that no enforceable settlement agreement existed between the parties.[12]

On November 4, 2010, the Magistrate Judge granted in part and denied in part plaintiffs' motion for leave to amend.[13]  The Magistrate Judge described the first through seventh causes of

---

[11]   (R. Doc. 118-5 at 22-23.)

[12]   (R. Doc. 123.)

[13]   (R. Doc. 130.)

4

action in the original complaint as "substantially the same as the first eight causes of action in the proposed amendment"[14] and concluded that those claims could not be reasserted against Ipsen and Ipsen Pharma because they were dismissed from the case pursuant to Rule 54(b).  Specifically, the Magistrate Judge stated that plaintiffs' motion for leave to amend "is denied as to the request to amend and reassert the claims found in the original complaint against Ipsen, Ipsen Pharma, and SCRAS."[15] The Magistrate Judge did, however, allow plaintiffs to amend the complaint to assert their three settlement-related claims against Biomeasure, Ipsen, and Ipsen Pharma.

Biomeasure then appealed the Magistrate Judge's decision to this Court, arguing that plaintiffs' settlement-related claims were futile, and that plaintiffs should therefore not be permitted to amend their original complaint.[16]  The Court affirmed the Magistrate Judge's decision on February 18, 2011, finding that the Magistrate Judge did not clearly err in concluding that plaintiffs' proposed amendment was not futile.[17]

---

[14]    (*Id.* at 2.)

[15]    (*Id.* at 7.)

[16]    (R. Doc. 133.)

[17]    (R. Doc. 141.)

Plaintiffs then filed an amended complaint on March 10, 2011, removing their allegations against Ipsen and Ipsen Pharma in the first through eighth causes of action.[18]

Biomeasure now moves to strike plaintiffs' first through eighth causes of action under Rule 12(f) and to dismiss plaintiffs' tenth and eleventh causes of action under Rule 12(b)(6).


## II.   DISCUSSION

## A.   Rule 12(f)

### 1.   Legal Standard

Rule 12(f) proves that "the court may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A motion to strike under Rule 12(f) "is a drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Board of Pub. Instruction of Escambia Country*, 306 F.2d 862, 868 (5th Cir.1962) (quoting *Brown v. Williamson Tobacco Corp. V. United States*, 201 F.2d 819,822 (6th Cir. 1953); *see also Turner v. Ehticon Endo-Surgery, Inc.*, 2003 WL 22872103 (E.D. La. 2003) (noting that motions to strike are disfavored and courts grant them on an

---

[18]    (R. Doc. 143.)

6

infrequent basis).  Accordingly, such a motion should be granted only when "the allegations are prejudicial to the defendant or immaterial to the lawsuit." *Johnson v. Harvey*, 1998 WL 596745, at *7 (E.D. La. 1998) (quoting *Veazie v. Southern Greyhound Lines*, 374 F. Supp. 811, 815 (E.D. La. 1994)).  Immateriality is established by showing the challenged allegations "can have no possible bearing upon the subject matter of the litigation." *Sadler v. Benson Motors Corp.*, 1997 WL 266735, at *1 (E.D. La. 1997) (quoting *Succession of Wardlaw v. Whitney Nat'l Bank*, 1994 WL 479183, at *1 (E.D. La. 1994)).  The court will not decide a disputed question of fact on a motion to strike.  *Succession of Wardlaw*, 1994 WL 479183 at *1 (citing *Augustus*, 306 F.2d at 868).

   2.   <u>Analysis</u>

   Biomeasure argues that the first through eighth causes of action in plaintiffs' amended complaint should be stricken, because "plaintiffs in this case first sought, *but were denied*, leave by the Magistrate Judge, to amend the Complaint to assert the first eight Causes of Action."[19]  Biomeasure contends that, because plaintiffs were denied leave to assert those claims, and because plaintiffs did not appeal the Magistrate Judge's

--------

[19]   (R. Doc. 153-1. at 7.)

decision, the first eight causes of action are "plainly without legal effect."[20]  Biomeasure's argument, however, is based on a misreading of the Magistrate Judge's order and the procedural history of this case.

In the original complaint, plaintiffs asserted their first through seventh causes of action against Biomeasure, Ipsen, and Ipsen Pharma.  Ipsen and Ipsen Pharma, both French entities, were then dismissed from this action for lack of personal jurisdiction.  The Court dismissed no claims against Biomeasure. After the breakdown of settlement discussions, plaintiffs filed a motion before the Magistrate Judge for leave to amend.  The proposed amended complaint included the original seven causes of action against Biomeasure.  In addition, plaintiffs sought to assert three settlement-related claims against Biomeasure, Ipsen, and Ipsen Pharma; to reassert the original seven causes of action against Ipsen and Ipsen Pharma; and to add an eighth cause of action against Biomeasure, Ipsen, and Ipsen Pharma for "Unfair Business Practices Respecting Inventorship."

Biomeasure opposed plaintiffs' motion for leave to amend on the grounds that (1) final judgment under Rule 54(b) had been entered in favor of Ipsen and Ipsen Pharma on the first seven

---

[20]     (*Id.* at 8.)

claims, (2) Ipsen and Ipsen Pharma's settlement-related contacts with the forum state were insufficient to confer personal jurisdiction over them, and (3) no enforceable settlement agreement exists between the parties.[21]   Notably, however, Biomeasure did not attack plaintiffs' assertion of the original seven causes of action against it.   Accordingly, in ruling on plaintiffs' motion for leave to amend, the Magistrate Judge did not address the validity of those claims as they relate to Biomeasure, as there was no suggestion that those claims were affected by the order dismissing Ipsen and Ipsen Pharma. Instead, the Magistrate Judge denied plaintiffs' motion only "as to the request to amend to reassert the claims found in the original complaint against Ipsen, Ipsen Pharma, and SCRAS."[22] Based on the Magistrate Judge's order and the relevant pleadings, the Court finds, contrary to Biomeasure's assertion, that the Magistrate Judge's ruling implicitly permitted plaintiffs to maintain the first through seventh causes of action against Biomeasure.   And there was no reason not to do so, as those claims have remained extant against Biomeasure from the beginning of this action.

---

[21]    (R. Doc. 123.)

[22]    (R. Doc. 130 at 7.)

9

Although the eighth cause of action, "Unfair Business Practices Respecting Inventorship," was not alleged in the original complaint, the Court finds that, by denying plaintiffs' motion for leave to amend only as it related to Ipsen and Ipsen Pharma, the Magistrate Judge also implicitly permitted plaintiffs to amend their complaint to add the eighth cause of action against Biomeasure.  This interpretation of the Magistrate Judge's order is consistent with her finding that the first seven causes of action in the original complaint were "substantially the same as the first eight causes of action in the proposed amendment."[23]  Because Biomeasure did not appeal specifically the Magistrate Judge's decision to allow plaintiffs to add this eighth cause of action, that determination may not be challenged at this time.  *See* Fed R. Civ. P. 72(a) (requiring objections to nondispositive orders of magistrate judges to be filed within 14 days).

Biomeasure alternatively argues that, if the first through eighth causes of action "are really nothing more than the same seven causes of action alleged in the original Complaint, the First through Eighth Causes of action of the Amended Complaint

_____

[23]    (R. Doc. 130 at 2.)

10

should be stricken as impermissibly redundant and immaterial."[24] The redundancy analysis of Rule 12(f), however, applies to allegations made within a single complaint, not to the same allegations restated in an amended complaint. *See* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 1382 (1983) ("'Redundant' matter consists of allegations that constitute a needless repetition of other averments *in the pleading*.") (emphasis added); *see also Lacey v. Maricopa County*, --- F.3d ---, 2011 WL 2276198, at *11 (9th Cir. 2011) ("The amended complaint supersedes the original, the latter being treated thereafter as nonexistent.") (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)). And matter contained in the pleadings is considered "immaterial" only when it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Francois v. Blandford*, 2010 WL 4362817, at *2 (E.D. La. 201) (quoting Wright, Miller & Kane, *supra*, § 1382). Plaintiffs first through eighth causes of action therefore cannot be stricken as either redundant or immaterial. Accordingly, the Court denies Biomeasure's motion to strike those causes of action from the amended complaint.

---

[24]    (R. Doc. 173 at 2, 5.)

**B.    Rule 12(b)(6)**

1.    <u>Legal Standard</u>

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 129 S. Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true.  *Id.*  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Twombly*, 550 U.S. at 555.  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery

12

will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 255-57.  If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Care v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.

2.  <u>Analysis</u>

Biomeasure moves to dismiss plaintiffs' tenth and eleventh causes of action under Rule 12(b)(6).  As an initial matter, the Court notes that, in its February 18, 2011 order, it affirmed the Magistrate Judge's decision to allow plaintiffs to assert these claims.[25]  In doing so, the Court concluded that these claims were not futile under the same standard that applies under Rule 12(b)(6).  Nevertheless, because Biomeasure now raises additional arguments, and because the Court reviewed the Magistrate Judge's decision for only clear error, the Court will again address the legal sufficiency of those causes of action.

        *a.   Breach of the Duty of Good Faith and Fair Dealing*

---

[25]   (R. Doc. 141.)

13

In their tenth cause of action, plaintiffs allege that defendants breached the implied duty of good faith and fair dealing.  Under Louisiana law, "a party to a contract has an implied obligation to put forth a good faith effort to fulfill the conditions of the contract." *Bloom's Incorporated v. Performance Fuels, LLC*, 16 So.3d 476, 480 (La. Ct. App. 2009); *see also* La. Civ. Code art. 1983 ("Contracts must be performed in good faith."); *Brill v. Catfish Shaks of America*, 727 F. Supp. 1035, 1039 (E.D. La. 1989) ("As a general rule, there is an implied covenant of good faith and fair dealing in every contract.").  To state a cause of action for breach of the duty of good faith and fair dealing, "the plaintiff must allege that the defendant's actions were prompted by fraud, ill will, or sinister motivation." *Commercial Nat'l Bank v. Audobon Meadow Partnership*, 566 So.2d 1136, 1139 (La. Ct. App. 1990) (denying plaintiff's LUTPA claim).  "A mere failure to fulfill an obligation, without a showing of intent or ill will, does not constitute a breach of good faith." *Brill*, 727 F. Supp. at 1041. In *Industrias Magromer Cueros y Pieles S.A. v. Louisiana*, 293 F.3d 912 (5th Cir. 2002), the Fifth Circuit relying on *Bond v. Broadway*, 607 So.2d 865 (La. Ct. App. 1992), provided the following definition of bad faith:

The opposite of "good faith," generally implying or

14

> involving actual or constructive fraud, or a design to mislead and deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive.  The term bad faith means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives.

*Industrias Magromer*, 293 F.3d at 922.

Plaintiffs allege that the parties agreed to settle the underlying dispute on February 11, 2010, and that the agreement was memorialized in the Term Sheet on April 9, 2010.[26] Plaintiffs further allege that, although the parties continued discussions regarding the language of the final agreement for several months, exchanging multiple drafts and agreeing to continuances of the deadlines in this action, the related Fifth Circuit appeal, and a separate action in the District of Columbia, counsel for Ipsen and Ipsen Pharma informed plaintiffs on September 15, 2010 that "Ipsen and Ipsen Pharma refused to execute the documents and that the Defendants no longer intended to honor the parties' settlement agreement."[27]  Absent from plaintiffs' amended complaint, however, are any allegations that defendants' decision not to follow through with the alleged agreement was motivated by fraud, ill will, or sinister

---

[26]    (R. doc. 143 at 15.)

[27]    (*Id.* at 16-17.)

15

motivation.  Nor do plaintiffs allege sufficient facts to support a reasonable inference to that effect.  *See Commercial Nat'l Bank*, 566 So.2d at 1139 (concluding that plaintiff's pleadings fail to state a cause of action arising from a breach of the duty of good faith and fair dealing because the petition did "not allege, either expressly or impliedly, that any of [defendant's] actions or failures were prompted by fraud, ill will, or sinister motivation").  Moreover, although plaintiffs allege that "Defendants' decision to execute the Term Sheet and discuss the language of the final documents, but then refuse to execute those documents . . . constitutes a breach of Ipsen and Ipsen Pharma's duty of good faith and fair dealing," these conclusory assertions are insufficient to avoid dismissal under Rule 12(b)(6).  *See Iqbal*, 129 S. Ct. at 1949-50 (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Plaintiffs have alleged nothing to suggest that Biomeasure's decision not to execute the alleged settlement agreement amounts to anything more than a breach of contract. Accordingly, the Court finds that Biomeasure is entitled to have plaintiffs' tenth cause of action dismissed.  *See Dufrene v. Browning-Ferris, Inc.*, 1997 WL 587765, at *2 (E.D. La. 1997) (finding that defendants breach of a collective bargaining agreement did not establish a breach of good faith because,

16

"[u]nder Louisiana law, the obligation of good faith and fair dealing is not breached merely by the failure to perform a particular obligation").

        *b.   Unfair Trade Practices*

     In their eleventh cause of action, plaintiffs assert a claim under the Louisiana Unfair Trade Practices Act (LUTPA).  The LUTPA proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. R.S. § 51:1405(A); *see also Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1331 (5th Cir. 1994) ("The real thrust of the LUTPA . . . is to deter injury to competition.").  Courts determine what "unfair" and "deceptive" conduct is on a case by case basis.  *American Machinery Movers, Inc. v. Machinery Movers of New Orleans, LLC*, 136 F. Supp. 2d 599, 604 (E.D. La. 2001); *Core v. Martin*, 543 So.2d 619, 621 (La. Ct. App. 1989).  Louisiana courts have described a practice as unfair "when the practice is unethical, oppressive, unscrupulous, or substantially injurious."  *Jefferson v. Chevron U.S.C., Inc.*, 713 So.2d 785, 792 (La. Ct. App. 1998); *Omnitech*, 11 F.3d at 1332.  A trade practice is deceptive when it amounts to "fraud, deceit or misrepresentation."  *Jefferson*, 713 So.2d at 793; *see also Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220

17

F.3d 396, 404 (5th Cir. 2000) ("To recover under LUTPA, a
plaintiff must prove fraud, misrepresentation, or other unethical
conduct."). Private parties who suffer an "ascertainable loss of
money or movable property" because of another party's unfair or
deceptive practices have standing to bring suit to recover
"actual damages." La. Rev. Stat. § 51:1409.

Biomeasure argues that dismissal of plaintiffs' LUTPA claim
is required because plaintiffs are neither "consumers" nor
"business competitors" and therefore lack standing to sue under
the statute.[28] Biomeasure's argument, however, is based on an
outdated interpretation of the statute. Although the Fifth
Circuit previously limited LUTPA's private right of action to
consumers and business competitors, *see Gardes Directional
Drilling v. U.S. Turnkey Exploration Co.*, 98 F.3d 860, 867-68
(5th Cir. 1996) (recognizing a split among Louisiana courts of
appeal on whether a cause of action under LUTPA should be
available only to consumers and business competitors or
interpreted more broadly), the Louisiana Supreme Court has since
held that LUTPA includes no such limitation. In *Cheramie
Services, Inc. v. Shell Deepwater Production, Inc.*, 35 So.3d 1053
(La. 2010), the Court explained:

---

[28]    (R. Doc. 153-1 at 15-17.)

> LUTPA grants a right of action to any person, natural or
> juridical, who suffers an ascertainable loss as a result of
> another person's use of unfair methods of competition and
> unfair or deceptive acts or practices in the conduct of any
> trade or commerce.  Although business consumers and
> competitors are included in the group afforded a private
> right of action, they are not its exclusive members.

*Id.* at 1057 (repudiating contrary holdings because "any limitation must be contained in the language of the statute"). The Court therefore rejects Biomeasure's argument that plaintiffs lack standing to assert a LUTPA claim.

Nevertheless, in clarifying that LUTPA's standing requirement is not so limited, the Louisiana Supreme Court reiterated that "the range of prohibited practices under LUTPA is extremely narrow." *Id.* at 1060.  Here, plaintiffs allege that defendants "knowingly and willfully led Plaintiffs to believe that the dispute had been settled" and that "Defendants' conduct with respect to the parties' settlement agreement, including the announcement on September 15, 2010 that the Defendants would not execute that agreement, constitutes unfair methods of competition and unfair and deceptive acts and practices . . . ."[29]  Yet, nowhere in plaintiffs' amended complaint do they identify instances of either fraud or misrepresentation.  *Cf. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 386 (5th Cir.

---

[29]    (R. Doc. 143 at 24.)

2003) ("Generally, there is no inference of fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed."). Plaintiffs rely solely on defendants' ultimate failure to execute the final settlement agreement to support their LUTPA claim. Yet, Biomeasure's decision not to execute the final agreement, even following extensive negotiations, does not rise to the level of a LUPTA violation. Without more, this conduct cannot be distinguished from, at most, a simple breach of contract. And, as the Fifth Circuit explained in *Turner*, "[t]here is a great deal of daylight between a breach of contract claim and the egregious behavior [LUTPA] proscribes." *See Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993). Plaintiffs' eleventh cause of action must therefore be dismissed.

**IV. CONCLUSION**

For the foregoing reasons, Biomeasure's motion is DENIED IN PART and GRANTED IN PART.

New Orleans, Louisiana, this 28th day of July, 2011.

_Sarah Vance_

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE