UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ADMINISTRATORS OF THE TULANE                CIVIL ACTION
EDUCATIONAL FUND, ET AL.

VERSUS                                      NO: 08-5096

BIOMEASURE, INC., ET AL.                    SECTION: R(1)

**ORDER AND REASONS**

Before the Court are defendants Ipsen's[1] and Ipsen Pharma's[2] motions to dismiss plaintiffs' ninth, tenth, and eleventh causes of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court denies the motions as they relate to plaintiffs' ninth cause of action, as plaintiffs have alleged a plausible claim that Ipsen and Ipsen Pharma breached the alleged settlement agreement.  Because plaintiffs have failed to state a claim in their tenth and eleventh causes of action, the Court grants the motions as they relate to those claims.

**I.    BACKGROUND**

This case arises out of a dispute between the plaintiffs, the Administrators of the Tulane Educational Fund and David H. Coy, Ph.D., and the defendants, Biomeasure, Inc., Ipsen, S.A., and Ipsen Pharma, S.A.S. (f/k/a SCARS), over the invention of a

---

[1]    (R. Doc. 193.)

[2]    (R. Doc. 192.)

drug called Taspoglutide.  Plaintiffs brought suit on December 5, 2008, alleging that defendants deprived them of their rights to the drug in violation of multiple agreements.[3]  The original complaint sets out the following seven causes of action: (1) "Breach of Research Funding Agreement," (2) "Breach of Duty of Good Faith and Fair Dealing Under the Research Funding Agreement," (3) "Breach of the GLP-1 License," (4) "Breach of Good Faith and Fair Dealing Under GLP-1 License," (5) "Unjust Enrichment/Enrichment Without Cause," (6) "Breach of Fiduciary Duty," and (7) "Correction of Inventorship."[4]

On December 10, 2009, the Court ruled that it lacked personal jurisdiction over Ipsen and Ipsen Pharma, which are French entities and are the parent companies of Biomeasure.[5]  The Court granted plaintiffs' motion for entry of final judgment against Ipsen and Ipsen Pharma under Fed. R. Civ. P. 54(b),[6] and plaintiffs appealed that judgment.[7]

Plaintiffs moved for leave to amend their complaint on October 15, 2010,[8] alleging that Biomeasure, Ipsen, and Ipsen

---

[3]   (R. Doc. 1.)

[4]   (*Id.* at 13-18.)

[5]   (R. Doc. 75.)

[6]   (R. Doc. 98.)

[7]   (R. Doc. 103.)

[8]   (R. Doc. 118.)

Pharma entered into a binding settlement agreement with plaintiffs on February 11, 2010 but that defendants refused to honor that agreement.[9]  The agreement, plaintiffs contended, was memorialized in a "License and Settlement Term Sheet" (Term Sheet), which was signed by counsel for each party April 9, 2010.[10]  Plaintiffs alleged that, over the next few months, the parties discussed the language of a final settlement and drew up a Licence Agreement and a Settlement Agreement.[11]  Plaintiffs asserted that they executed those agreements, but that defendants ultimately refused to do so.

In the amended complaint, plaintiffs asserted three causes of action against defendants related to the purported settlement: "Breach of Settlement Agreement" (ninth cause of action), "Breach of Duty of Good Faith and Fair Dealing Under The Settlement Agreement" (tenth cause of action), and "Unfair Business Practices Respecting Settlement Agreement" (eleventh cause of action).  Plaintiffs maintained that, by entering into the settlement agreement, Ipsen and Ipsen Pharma consented to the personal jurisdiction of this Court.  Plaintiffs also reasserted their original seven causes of action against Ipsen, Ipsen Pharma, and Biomeasure and added an eighth cause of action for

---

[9]     (R. Doc. 118-5.)

[10]    (R. Doc. 115, Ex. A (under seal).)

[11]    (R. Doc. 115, Ex. B & C (under seal).)

"Unfair Business Practices Respecting Inventorship."[12]
Biomeasure opposed the motion to amend the complaint, challenging
the reassertion of claims against the previously dismissed
defendants and arguing that no enforceable settlement agreement
existed between the parties.[13]

On November 4, 2010, the Magistrate Judge granted in part
and denied in part plaintiffs' motion for leave to amend.[14]
The Magistrate Judge concluded that the first through seventh
causes of action could not be reasserted against Ipsen and Ipsen
Pharma because they were dismissed from the case pursuant to Rule
54(b).[15]  The Magistrate Judge did, however, allow plaintiffs to
amend the complaint to assert their three settlement-related
claims against Biomeasure, Ipsen, and Ipsen Pharma.  Biomeasure
then appealed the Magistrate Judge's decision to this Court,
arguing that plaintiffs' settlement-related claims were futile,
and that plaintiffs should therefore not be permitted to amend
their original complaint.[16]  The Court affirmed the Magistrate
Judge's decision on February 18, 2011, finding that the
Magistrate Judge did not clearly err in concluding that

---

[12]   (R. Doc. 118-5 at 22-23.)

[13]   (R. Doc. 123.)

[14]   (R. Doc. 130.)

[15]   (*Id.*)

[16]   (R. Doc. 133.)

4

plaintiffs' proposed amendment was not futile.[17]  Plaintiffs then filed an amended complaint on March 10, 2011, removing their allegations against Ipsen and Ipsen Pharma in the first through eighth causes of action.[18]

Most recently, on July 28, 2011, the Court denied in part and granted in part a motion by Biomeasure to strike plaintiffs' first through seven causes of action against it under Rule 12(f) and to dismiss plaintiffs' tenth and eleventh causes of action under Rule 12(b)(6).[19]  Although the Court determined that Biomeasure had not established that the assertion of the first through seventh causes of action were improper, it dismissed plaintiffs' tenth and eleventh causes of action, concluding that plaintiffs had failed to allege facts sufficient to maintain those claims.

Ipsen and Ipsen Pharma now move to dismiss plaintiffs' ninth, tenth, and eleventh causes of action for failure to state a claim.

II.  STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is

---

[17]  (R. Doc. 141.)

[18]  (R. Doc. 143.)

[19]  (R. Doc. 197.)

plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.
Ct. 1937, 1960 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 547 (2007)).  A claim is facially plausible when
the plaintiff pleads facts that allow the court to "draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Iqbal*, 129 S. Ct. at 1940.  A court must
accept all well-pleaded facts as true and must draw all
reasonable inferences in favor of the plaintiff. *Lormand v. U.S.
Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v.
Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  But the Court is not
bound to accept as true legal conclusions couched as factual
allegations. *Iqbal*, 129 S. Ct. at 1949.

A legally sufficient complaint must establish more than a
"sheer possibility" that plaintiff's claim is true. *Id.*  It need
not contain detailed factual allegations, but it must go beyond
labels, legal conclusions, or formulaic recitations of the
elements of a cause of action. *Twombly*, 550 U.S. at 555.  In
other words, the face of the complaint must contain enough
factual matter to raise a reasonable expectation that discovery
will reveal evidence of each element of the plaintiff's claim.
*Lormand*, 565 F.3d at 256.  If there are insufficient factual
allegations to raise a right to relief above the speculative
level, *Twombly*, 550 U.S. at 555, or if it is apparent from the
face of the complaint that there is an insuperable bar to relief,

*Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.

In considering a motion to dismiss for failure to state a claim, the Court must typically limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Court, however, "may review the documents attached to the motion to dismiss, *e.g.*, the contract[] in issue here, where the complaint refers to the documents and they are central to the claim." *Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *see also Collins*, 224 F.3d at 498 (adopting the position that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim") (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

## III. DISCUSSION

### A.   Breach of Settlement Agreement

In their ninth cause of action, plaintiffs allege that, by executing the April 9, 2010 Term sheet, the parties entered into an enforceable agreement to settle the underlying dispute. Plaintiffs claim that "Ipsen, Ipsen Pharma and Biomeasure have breached their obligations under this settlement agreement by,

7

among other things, failing to provide payment to [plaintiffs] in accordance with the parties' agreement and as memorialized in the Term Sheet, as well as the License Agreement and Settlement Agreement."[20]

Ipsen and Ipsen Pharma argue that plaintiffs cannot maintain a cause of action because the Term Sheet is subject to certain conditions that did not occur and is therefore unenforceable. Ipsen and Ipsen Pharma rely on paragraph eight of the Term Sheet, which states:

> This Term Sheet shall be expressly subject to, and conditioned on: (i) the approval of the appropriate boards or boards of Tulane and the respective Boards of Directors of Ipsen, Ipsen Pharma (as successor-by-merger to SCRAS) and Biomeasure; and (ii) the confection and execution of mutually acceptable settlement agreements and such other instruments (including, but not limited to, the license of the GLP-1 Know-How and all intellectual property rights related to GLP-1) deemed necessary to effectuate the terms and provisions of this Term Sheet.

It is undisputed that the boards of Ipsen, Ipsen Pharma, and Biomeasure never approved the Term Sheet and that defendants never executed a final settlement agreement.  The ultimate determination of whether the Term Sheet is enforceable, however, depends on whether the parties intended to be bound by that agreement.  *See Chevron U.S.A. v. Martin Exploration Co.*, 447

---

[20]     (R. Doc. 143 at 23.)

So.2d 469, 472 (La. 1984) (finding an agreement enforceable, although labeled "preliminary" because the parties intended to be bound). And a preliminary agreement may be binding even if it is subject to later formalities that do not occur. *See id.; Newport Limited v. Sears, Roebuck & Company*, 6 F.3d 1058, 1065 (5th Cir. 1993) ("A so-called preliminary agreement may be binding, even though it refers to a future written agreement finalizing its contents.").

The various provisions of the Term Sheet cannot be easily reconciled. As Ipsen and Ipsen Pharma point out, the Term Sheet states that it is "subject to, and conditioned" the occurrence of the events set forth in paragraph 8. Yet, other provisions suggest that the parties intended for the Term Sheet to be binding nonetheless. For instance, the Term Sheet also states that it "shall be binding on the parties" and "shall serve to . . . further memorialize and confirm the compromise and settlement agreement in principle reached on February 11, 2010."[21] It further provides that, in settling the case, the parties were to file a stipulation of dismissal and that the stipulation was to provide that this Court "shall retain jurisdiction over the enforcement *of this Term Sheet*."[22] That the parties contemplated the need for enforcement of the Term

---

[21]   (R. Doc. 115, Ex. A (under seal).)

[22]   (*Id.*) (emphasis added)

Sheet itself, as opposed to subsequent agreements, make it at least plausible that the parties intended the Term Sheet to be independently binding.  Given this ambiguity, the Court finds that, contrary to Ipsen and Ipsen Pharma's assertions, the language in paragraph 8 does not preclude plaintiffs from maintaining their cause of action for breach of the alleged agreement.

Ipsen and Ipsen Pharma also argue that the Term Sheet is unenforceable because it was signed by counsel for the parties rather than by the parties themselves.[23]  Under Louisiana law, "[a] compromise shall be made in writing or recited in open court[.]"  La. Civ. Code art. 3072.  If not recited in open court, a compromise agreement must be "reduced to writing and signed by the parties or their agents." *Sullivan v. Sullivan*, 671 So.2d 315, 318-19 (La. 1996).  Although the "or their agents" language does not always explicitly in the relevant jurisprudence, "it is there by implication . . . because generally the attorneys rather than the parties negotiate and contract settlement agreements." *Dozier v. Rhodus*, 17 So.3d 402, 408 (La. Ct. App. 2009).  In order for an attorney to bind his or client to a settlement agreement, the attorney must have the client's written "clear and express consent." *Id.; Singleton v. Bunge Corp.*, 364 So.2d 1321, 1325 (La. Ct. App. 1978)

_____

[23]     (R. Doc. 192-1 at 16-18; R. Doc. 193-1 at 16-19.)

(recognizing that an attorney may not sign a binding settlement agreement without a written authorization).

In this case, plaintiffs assert that "the Term Sheet was executed by counsel, on behalf of . . . each of the Defendants, Ipsen, Ipsen Pharma, and Biomeasure."[24]  A reasonable inference can be drawn from this language that, if the Term Sheet was executed by counsel "on behalf of" Ipsen and Ipsen Pharma, then it was done so with the proper authority.  Although Ipsen and Ipsen Pharma suggest that dismissal is required for plaintiffs' failure to allege specifically that their authorization was written, the Court does not read the pleading requirements set forth in *Twombly* and *Iqbal* so stringently.  *See Iqbal*, 129 S. Ct. at 1940 (explaining that a claim is facially plausible when plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged").

In addition, Ipsen asserts that plaintiffs cannot maintain their ninth cause of action against it because the Term Sheet does not include any present obligations from Ipsen, but instead requires only that Ipsen provide plaintiffs with a "future and conditional" guarantee of Biomeasure's payment obligations.[25] Ipsen argues that, assuming the suspensive conditions of

---

[24]   (R. Doc. 143 at 15.)

[25]   (R. Doc. 193-1 at 10.)

paragraph 8 of the Term Sheet are fulfilled, "Ipsen might, one day, be obligated to execute the guarantee contemplated by the Term Sheet, but such a future, and conditional, obligation to provide a written guaranty simply cannot give rise to a present obligation to do anything or to pay anything with respect to [plaintiffs]."[26]  In essence, Ipsen's argument is that, because the suspensive conditions in paragraph 8 have not occurred, it has no obligation to guarantee Biomeasure's payment under the Term Sheet.  It is indistinguishable from Ipsen's more general argument, discussed above, that the Term Sheet is unenforceable.

In further support of its argument, Ipsen now relies on *Mapp Construction, LLC v. Southgate Penthouses, LLC*, 29 So.3d 548 (La. Ct. App. 2009).  There, one of the defendants in the case, Robert Day, entered into an agreement under which he was to provide a guarantee of $1,000,000.00 in the event that another defendant was unable to obtain the consent of a lender to place a second mortgage on a piece of development property within 45 days of execution *and*, in that case, if a third defendant failed to provide alternative security to the plaintiff upon the lender's refusal.  *Id.* at 568-69.  Plaintiff sued to enforce the agreement, and the trial court granted plaintiff's motion for partial summary judgment, finding that Day was a guarantor of the debt.  The Louisiana Court of Appeal reversed, however.  Based on

---

[26]   (*Id.* at 10-11.)

12

a review of the agreement, the court concluded that Day was not, in fact, a guarantor, and that "at best, the documents establish only the possibility that Robert Day would furnish such a guarantee in the future." *Id.*   In doing so, the court noted that Day's obligation arose only at some point in the future and only in the event that "other security specifically contemplated could not be obtained." *Id.*

Contrary to Ipsen's assertions, its obligations under the Term Sheet are distinguishable from the situation in *Mapp.* Whereas, in *Mapp*, the defendant was obligated to execute a personal guarantee only if a different security arrangement could not be obtained, in this case, the language of the Term Sheet, which plaintiffs' allege is a binding agreement, does not contain a similar limitation on Ipsen's obligation.   Paragraph 7 of the Term Sheet states in relevant part:  "The timely and complete performance of Biomeasure's obligations to pay the Settlement Monies . . . and to pay, remit and account for monies, if any, attributable to the Settlement Royalty shall be guaranteed by Ipsen."[27]   If the Term Sheet represents a binding agreement, Ipsen Pharma would have a present obligation to guarantee Biomeasure's payment.   Accordingly, the Court finds that dismissal is not required.

---

[27]     (R. Doc. 115, Ex. A (under seal).)

13

For its part, Ipsen Pharma additionally argues, somewhat similarly, that plaintiffs cannot maintain their ninth cause of action against it because it has no obligations under the Term Sheet.[28]  Ipsen Pharma maintains that, although the Term Sheet requires Biomeasure to pay settlement amounts to plaintiffs, Ipsen Pharma was not required to "provide payment," as plaintiffs allege, "nor was Ipsen Pharma, as part of this instrument, required to do, or not to do anything with respect to [plaintiffs]."[29]  The Court acknowledges that, under the Term Sheet, Ipsen Pharma has no payment obligation, or obligation to guarantee payment, to plaintiffs.  Nevertheless, Ipsen Pharma was included as a party to the Term Sheet, and the Term Sheet provides that, upon execution of the final settlement instruments, the parties, including Ipsen Pharma, were required to file a stipulation of dismissal of this action and the action pending in the District of Columbia.[30]  If the Term Sheet is a binding agreement, Ipsen Pharma was required to execute the settlement-related agreements and then to join in the stipulation of dismissal with plaintiffs.  And it is undisputed that Ipsen Pharma has not done so.  Moreover, accepting Ipsen Pharma's argument that it has no obligations under the Term Sheet would

---

[28]   (R. Doc. 192-1 at 10.)

[29]   (*Id..*)

[30]   (R. Doc. 115, Ex. A (under seal).)

14

render meaningless the Term Sheet's statement that the agreement, "shall be binding upon the parties,"[31] given that Ipsen Pharma was a party to the Term Sheet.  *See Amitech U.S.A., Ltd. v. Nottingham Const. Co.*, 57 So.3d 1043, 1063 (La. Ct. App. 2010) (interpreting contract to avoid rendering language meaningless). This language suggests that Ipsen Pharma incurred obligations through execution of the Term Sheet.  Accordingly, the Court finds that plaintiffs have alleged a plausible cause of action for breach of the alleged settlement agreement against Ipsen Pharma.

**B.   Breach of the Duty of Good Faith and Fair Dealing**

In their tenth cause of action, plaintiffs allege that defendants breached the implied duty of good faith and fair dealing.  Under Louisiana law, "a party to a contract has an implied obligation to put forth a good faith effort to fulfill the conditions of the contract."  *Bloom's Incorporated v. Performance Fuels, LLC*, 16 So.3d 476, 480 (La. Ct. App. 2009); *see also* La. Civ. Code art. 1983 ("Contracts must be performed in good faith."); *Brill v. Catfish Shaks of America*, 727 F. Supp. 1035, 1039 (E.D. La. 1989) ("As a general rule, there is an implied covenant of good faith and fair dealing in every contract.").  To state a cause of action for breach of the duty

---

[31]     (R. Doc. 115, Ex. A (under seal).)

of good faith and fair dealing, "the plaintiff must allege that the defendant's actions were prompted by fraud, ill will, or sinister motivation." *Commercial Nat'l Bank v. Audobon Meadow Partnership*, 566 So.2d 1136, 1139 (La. Ct. App. 1990) (denying plaintiff's LUTPA claim).  "A mere failure to fulfill an obligation, without a showing of intent or ill will, does not constitute a breach of good faith." *Brill*, 727 F. Supp. at 1041. In *Industrias Magromer Cueros y Pieles S.A. v. Louisiana*, 293 F.3d 912 (5th Cir. 2002), the Fifth Circuit relying on *Bond v. Broadway*, 607 So.2d 865 (La. Ct. App. 1992), provided the following definition of bad faith:

> The opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead and deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive.  The term bad faith means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives.

*Industrias Magromer*, 293 F.3d at 922.

Plaintiffs allege that the parties agreed to settle the underlying dispute on February 11, 2010, and that the agreement was memorialized in the Term Sheet on April 9, 2010.[32] Plaintiffs further allege that, although the parties continued discussions regarding the language of the final agreement for several months, exchanging multiple drafts and agreeing to

_____

[32]   (R. doc. 143 at 15.)

continuances of the deadlines in this action, the related Fifth
Circuit appeal, and a separate action in the District of
Columbia, counsel for Ipsen and Ipsen Pharma informed plaintiffs
on September 15, 2010 that "Ipsen and Ipsen Pharma refused to
execute the documents and that the Defendants no longer intended
to honor the parties' settlement agreement."[33]   Absent from
plaintiffs' amended complaint, however, are any allegations that
defendants' decision not to follow through with the alleged
agreement was motivated by fraud, ill will, or sinister
motivation.   Nor do plaintiffs allege sufficient facts to support
a reasonable inference to that effect.   *See Commercial Nat'l
Bank*, 566 So.2d at 1139 (concluding that plaintiff's pleadings
fail to state a cause of action arising from a breach of the duty
of good faith and fair dealing because the petition did "not
allege, either expressly or impliedly, that any of [defendant's]
actions or failures were prompted by fraud, ill will, or sinister
motivation").   Moreover, although plaintiffs allege that
"Defendants' decision to execute the Term Sheet and discuss the
language of the final documents, but then refuse to execute those
documents . . . constitutes a breach of Ipsen and Ipsen Pharma's
duty of good faith and fair dealing," these conclusory assertions
are insufficient to avoid dismissal under Rule 12(b)(6).   *See
Iqbal*, 129 S. Ct. at 1949-50 (noting that courts "are not bound

---

[33]      (*Id.* at 16-17.)

to accept as true a legal conclusion couched as a factual allegation"). Plaintiffs have alleged nothing to suggest that Ipsen and Ipsen Pharma's decision not to execute the alleged settlement agreement amounts to anything more than a breach of contract. Accordingly, the Court finds that Ipsen and Ipsen Pharma are entitled to have plaintiffs' tenth cause of action dismissed. *See Dufrene v. Browning-Ferris, Inc.*, 1997 WL 587765, at *2 (E.D. La. 1997) (finding that defendants breach of a collective bargaining agreement did not establish a breach of good faith because, "[u]nder Louisiana law, the obligation of good faith and fair dealing is not breached merely by the failure to perform a particular obligation").

## C.   Unfair Trade Practices

In their eleventh cause of action, plaintiffs assert a claim under the Louisiana Unfair Trade Practices Act (LUTPA). The LUTPA proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. § 51:1405(A); *see also Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1331 (5th Cir. 1994) ("The real thrust of the LUTPA . . . is to deter injury to competition."). Courts determine what "unfair" and "deceptive" conduct is on a case by case basis. *American Machinery Movers, Inc. v. Machinery Movers of New Orleans, LLC*, 136 F. Supp. 2d 599, 604 (E.D. La.

2001); *Core v. Martin*, 543 So.2d 619, 621 (La. Ct. App. 1989).
Louisiana courts have described a practice as unfair "when the
practice is unethical, oppressive, unscrupulous, or substantially
injurious." *Jefferson v. Chevron U.S.C., Inc.*, 713 So.2d 785,
792 (La. Ct. App. 1998); *Omnitech*, 11 F.3d at 1332.  A trade
practice is deceptive when it amounts to "fraud, deceit or
misrepresentation." *Jefferson*, 713 So.2d at 793; *see also
Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220
F.3d 396, 404 (5th Cir. 2000) ("To recover under LUTPA, a
plaintiff must prove fraud, misrepresentation, or other unethical
conduct.").  Private parties who suffer an "ascertainable loss of
money or movable property" because of another party's unfair or
deceptive practices have standing to bring suit to recover
"actual damages."  La. Rev. Stat. § 51:1409.

The Louisiana Supreme Court recently reiterated that "the
range of prohibited practices under LUTPA is extremely narrow."
*Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 35
So.3d 1053, 1060 (La. 2010).  Here, plaintiffs allege that
defendants "knowingly and willfully led Plaintiffs to believe
that the dispute had been settled" and that "Defendants' conduct
with respect to the parties' settlement agreement, including the
announcement on September 15, 2010 that the Defendants would not
execute that agreement, constitutes unfair methods of competition

and unfair and deceptive acts and practices . . . ."[34]  Yet,
nowhere in plaintiffs' amended complaint do they identify
instances of either fraud or misrepresentation.  *Cf. Willard v.
Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 386 (5th Cir.
2003) ("Generally, there is no inference of fraudulent intent not
to perform from the mere fact that a promise made is subsequently
not performed.").  Plaintiffs rely solely on defendants' ultimate
failure to execute the final settlement agreement to support
their LUTPA claim.  Yet, Ipsen and Ipsen Pharma's decision not to
execute the final agreement, even following extensive
negotiations, does not rise to the level of a LUTPA violation.
Without more, this conduct cannot be distinguished from, at most,
a simple breach of contract.  And, as the Fifth Circuit explained
in *Turner*, "[t]here is a great deal of daylight between a breach
of contract claim and the egregious behavior [LUTPA] proscribes."
*See Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir.
1993).  Plaintiffs' eleventh cause of action must therefore be
dismissed.

---

[34]    (R. Doc. 143 at 24.)

## IV.   CONCLUSION

For the foregoing reasons, Ipsen's and Ipsen Pharma's motions are DENIED IN PART and GRANTED IN PART.


New Orleans, Louisiana, this __15th__ day of September, 2011.

_____
                SARAH S. VANCE
      UNITED STATES DISTRICT JUDGE

21